

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
No. SJ-2010- 6103

RECEIVED

FEB 25 2010

MAURA S. DOYLE CLERK
OF THE SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

|  |  |
|---|---|
| DOROTHY ANN FINCH, ROXANNE S. PRINCE, and JANE DOES NOS. 1-2, the names of Jane Doe being fictitious,<br>    Individually and on Behalf of<br>    All Similarly Situated Persons,<br><br>        Plaintiffs<br><br>vs.<br><br>COMMONWEALTH HEALTH INSURANCE CONNECTOR AUTHORITY, and JON KINGSDALE, in his official capacity as the executive director of COMMONWEALTH HEALTH INSURANCE CONNECTOR AUTHORITY,<br><br>        Defendants | COMPLAINT |

## INTRODUCTORY STATEMENT

1.      This is a class action lawsuit challenging a statute that is unconstitutional on its face. Chapter 65, section 31(a) of the Acts of 2009 terminated the Commonwealth Care health coverage of 26,000 Massachusetts residents, solely because they are legal immigrants. It also barred participation in Commonwealth Care to 8,000 legal immigrants who were not yet members. The statute denied the plaintiffs their right to equal protection under the law, a violation of the Massachusetts Declaration of Rights and the United States Constitution.

2.      The plaintiffs are members of a vulnerable minority singled out for discrimination. Legal immigrants pay taxes, they work, they have drivers' licenses, they

attend school, they participate in their communities, and they raise families. Many are on a legal path to citizenship. However, because they are not yet citizens, they do not vote. When it came time to close a budget shortfall last July, the Legislature chose to target its cuts at these non-voting residents. Its decision broke the Commonwealth's groundbreaking promise of universal health coverage for all residents, leaving thousands uninsured. It also deprived the plaintiffs of their constitutional rights.

JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under G.L. c. 214, § 1, G.L. c. 231A, § 1 and 42 U.S.C. § 1983. Venue is established by G.L. c. 214, § 5. Original jurisdiction in the Supreme Judicial Court is justified by the fact that this is a matter clearly affecting the public interest, involving a claim that a recently enacted statute is unconstitutional on its face, raising a question of law that involves no genuine issues of material fact. Speedy resolution of the issues in this case will serve the interests of the individual plaintiffs and the class they represent and, as well, the interests of the Commonwealth in resolving doubts about the validity of a statute with budgetary implications.

PARTIES

4.      Plaintiff Dorothy Ann Finch ("Finch") is a resident of Boston, County of Suffolk, Massachusetts and lawfully lives and works in Massachusetts. She is a recipient of the Diversity Visa Lottery Program of the United States Department of State. Prior to the enactment of § 31(a), she would have been entitled to participate in Commonwealth Care. Solely on account of § 31(a), she is barred from participation in Commonwealth Care and is uninsured.

- 2 -

5.      Plaintiff Roxanne S. Prince ("Prince") is a resident of Boston, County of Suffolk, Massachusetts and lawfully lives and works in Massachusetts. She is the beneficiary of a family-based immigration petition filed by her brother who is a United States citizen. Prior to the implementation of § 31(a), she was entitled to participate in and did, in fact, participate in Commonwealth Care. On August 31, 2009, she was terminated from Commonwealth Care, solely on account of § 31(a).

6.      Plaintiff Jane Doe 1 is a legal resident of Massachusetts and lawfully resides in the United States. She is an applicant for political asylum. Prior to the implementation of § 31(a), she was entitled to participate in and did, in fact, participate in Commonwealth Care. On August 31, 2009, she was terminated from Commonwealth Care, solely on account of § 31(a).

7.      Plaintiff Jane Doe 2 is a legal resident of Massachusetts and lawfully resides and works in the United States. She has been a legal permanent resident for less than five years and was initially the beneficiary of a Massachusetts employer-based immigration petition. Prior to the implementation of § 31(a), she was entitled to participate in and did, in fact, participate in Commonwealth Care. On August 31, 2009, she was terminated from Commonwealth Care, solely on account of § 31(a).

8.      The defendant, Commonwealth Health Insurance Connector Authority ("the Connector"), is a body politic and corporate and public instrumentality of the Commonwealth of Massachusetts. It is an independent state authority that is responsible for implementing the Commonwealth Care program ("Commonwealth Care" more fully defined in ¶ 15), a state-subsidized commercial insurance program created by G.L. c.

118H and G.L. c. 176Q.  The defendant's place of business is 100 City Hall Plaza, 6th Floor, Boston, County of Suffolk, Massachusetts.

9.      The defendant, Jon Kingsdale ("Kingsdale"), is the executive director of the Connector, and, as such, is charged with the responsibility to implement Commonwealth Care.  He is sued in his official capacity as executive director of the Connector.  The defendant's place of business is 100 City Hall Plaza, 6th Floor Boston, County of Suffolk, Massachusetts.

CLASS ACTION ALLEGATIONS

10.     The individually named plaintiffs consist solely of immigrants to the United States, lawfully residing and working in Massachusetts  They are labeled "aliens with special status" by the Commonwealth and are referred to herein as "special status immigrants."  For the most part, special status immigrants have possessed legal permanent residency for less than five years, and therefore, under the terms of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C. § 1612(b)(2) et seq. ("PRWORA"), the Commonwealth may not receive partial reimbursement from the federal government for their medical costs.

11.     The individually named plaintiffs bring this action on their own behalf and on behalf of a class of all other similarly situated persons, pursuant to Mass.R.Civ.P.23. This class is defined as all "residents" of Massachusetts, as that term is defined in G.L. c. 118H, § 1, who are legal immigrants terminated from Commonwealth Care or denied eligibility for Commonwealth Care solely as a result of their alienage, pursuant to § 31(a) (hereinafter referred to as "the plaintiff class").

- 4 -

12.     A class action is proper because (1) the plaintiff class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the plaintiff class that predominate over any questions affecting individual members, (3) the claims of the representative plaintiffs are typical of the claims of the plaintiff class, and (4) the representative plaintiffs will fairly and adequately protect the interests of the plaintiff class. The questions of law and fact common to the members of the plaintiff class that predominate over any questions affecting individual members include the constitutionality of § 31(a) and the legality of the defendants' policies and practices in denying and terminating Commonwealth Care to the plaintiff class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FACTS

### Massachusetts' Policy of Providing Health Care Coverage For Special Status Immigrants under the Health Care Reform Act of 2006

13.     In April 2006, the Massachusetts Legislature enacted chapter 58, § 45, of the Acts of 2006, "An Act Providing Access to Affordable, Quality, Accountable Health Care." This health care reform statute was explicitly designed to make affordable health insurance available to all legal residents of Massachusetts. Chapter 58 combined both statutory subsidies and statutory mandates to achieve its goal of universal insurance coverage for all legal Massachusetts residents age nineteen and older. To assist legal residents with limited means, chapter 58 sought to fill gaps in existing state subsidized coverage through the subsidization of premiums for those persons falling outside MassHealth eligibility but whose household income did not exceed 300 percent of the federal poverty level ("FPL").

14.    To induce all legal residents whose income exceeds 150 percent of the FPL to

enroll in a health insurance program, chapter 58 imposed an individual mandate on all

legal residents to obtain and maintain affordable and creditable health insurance

coverage. The sanction for non-compliance with the mandate imposed by chapter 58 is a

tax penalty. To be exempted from the mandate, a resident must prove that his or her

individual circumstances establish that no affordable insurance is available, under state

regulations that define affordability.

15.    An essential component of chapter 58 was the creation of Commonwealth Care,

which is a state subsidized, commercial health insurance program for uninsured residents

of the Commonwealth with incomes that fall within certain guidelines and who meet

other qualifications. Commonwealth Care was created to reduce uninsurance in the

Commonwealth by providing subsidies to assist eligible individuals in purchasing health

insurance and creating sliding-scale premium contributions based on income.

16.    Under Commonwealth Care all special status immigrants without access to other

sources of affordable insurance, including MassHealth, and whose household income

does not exceed 300 percent of the FPL were entitled to obtain state subsidized insurance

through a newly created independent authority, the Connector. The premiums charged

for participation in Commonwealth Care are limited by regulations promulgated by the

Connector to levels that are deemed affordable based on income level.

17.    Among the major goals of Commonwealth Care are the reduction of the number

of legal residents of Massachusetts lacking health insurance, a lessening of the burden on

the Health Safety Net program, under which the state pays for hospital and community

- 6 -

health center services for low-income residents, and a reduction of racial and ethnic

disparities in the provision of health care.

18.    Commonwealth Care is not part of MassHealth, the Commonwealth's Medicaid

program, which is explicitly defined under G.L. c. 118E, § 9 and § 9A as a health benefits

program operating pursuant to conditions set by federal law.

19.    Commonwealth Care eligibility under G.L. c. 118H, § 3(a) is devoid of any

requirement for federal matching funds or federal financial support.

20.    Commonwealth Care is funded under the Commonwealth Care Trust Fund

pursuant to G.L. c. 29, § 2000, which provides in relevant part:

> There is hereby established and set up on the books of the commonwealth a
> separate fund to be known as the Commonwealth Care Trust Fund, in this section
> called the trust fund. There shall be credited to the trust fund: (a) all contributions
> collected under section 188 of chapter 149, [Chapter 149: Section 188. Fair share
> employer contribution] (b) all revenue from surcharges imposed under section
> 18B of chapter 118G [Chapter 118G: Section 18B. Free rider surcharges on non-
> providing employers] , (c) any transfers from the Health Safety Net Trust Fund,
> established by section 57 of chapter 118E, (d) revenue deposited from penalties
> collected under chapter 111M [Chapter 111M: Section 2. Duty for certain adults
> to obtain and maintain creditable coverage; reporting of coverage on tax return;
> penalties for violation]. (brackets added).

21.    If the defendants determine that amounts in the Commonwealth Care Trust Fund

are insufficient to meet the projected costs of enrolling new eligible individuals into

Commonwealth Care, Defendant Kingsdale "shall impose a cap on enrollment in the

program." G.L. c. 118H, § 5.   The defendants have not at any time capped enrollment in

Commonwealth Care.

22.    To promote the goals of chapter 58, the General Court defined a "resident"

eligible for  participation in Commonwealth Care to include ". . . a person who is not a

citizen of the United States but who is otherwise permanently residing in the United

States under color of law; provided, however, that the person has not moved into the

commonwealth for the sole purpose of securing health insurance under this chapter; . . ."

G.L. c. 118H, § 1 (emphasis added).

23.    The statutory definition of "resident" in G.L. c. 118H, § 1, includes the named

plaintiffs and the class they represent.

24.    From its inception and at all times until August 31, 2009, Commonwealth Care

provided coverage on an equal basis for all legal Massachusetts residents who are

otherwise eligible for benefits under state law, including the plaintiffs and the members

of the class they represent.

### Enactment of § 31(a)

25.    Section 31(a) of chapter 65 of the Acts of 2009 was enacted on July 21, 2009. Its

sole purpose was to exclude the plaintiff class from participation in Commonwealth Care.

It reads as follows:

> SECTION 31. (a) Except as provided in subsection (b), notwithstanding
> any general or special law to the contrary, an eligible individual pursuant
> to section 3 of chapter 118H of the General Laws [Commonwealth Care]
> shall not include persons who cannot receive federally-funded benefits
> under sections 401, 402 and 403 of the Personal Responsibility and Work
> Opportunity Reconciliation Act of 1996 [PRWORA], Pub. L. No. 104-
> 193, as amended, for fiscal year 2010. (brackets and emphasis added).

26.    Section 31(a)'s exclusion from Commonwealth Care of residents who cannot

receive federally funded benefits under PRWORA is a newly imposed condition to

Commonwealth Care eligibility applied solely against the plaintiff class.

27.    As a result of the Legislature's enactment of § 31(a), the defendants have been

required to and have in fact terminated the individual plaintiffs and members of the

plaintiff class from Commonwealth Care.

- 8 -

28.     As a result of the Legislature's enactment of § 31(a), the Commonwealth estimates that 26,000 special status immigrants were terminated from Commonwealth Care and 8,000 special status immigrants were denied Commonwealth Care. All of these legal residents are the plaintiff class.

29.     According to the defendants' estimates, the Commonwealth saved over $80 million as a result of the Legislature's enactment of § 31(a).

30.     United States citizens who were participating in Commonwealth Care when § 31(a) was enacted continue to be eligible for and enrolled in Commonwealth Care without any reduction or change in premiums or benefits under the terms of § 31(a).

31.     There are other participants in Commonwealth Care for whom the federal government does not provide any financial support to the state on account of federal restrictions. These other participants in Commonwealth Care are ineligible for federal reimbursement and cannot receive federally funded benefits. These participants are United States citizens, not special status immigrants. Unlike the plaintiff class, these participants were neither terminated nor excluded from Commonwealth Care by § 31(a), despite the greater cost for their care imposed on the Commonwealth by virtue of their exclusion from federally funded benefits.

32.     The plaintiff class remains subject to the individual mandate established by chapter 58 and enforced under G.L. c. 111M, § 2, unless their income is at or below 150 percent of the federal poverty level. All other special status immigrants remain subject to the individual mandate and must take affirmative steps under 2009 Schedule HC or file an appeal to avoid being fined for certain gaps in insurance coverage or lacking insurance.

- 9 -

## Impact of § 31(a) on Special Status Immigrants

33.     Finch is a 51-year-old woman who lives and works in Massachusetts. Finch was granted lawful permanent residency and work authorization under the Diversity Immigrant Visa Program. She came to the United States in 2006. Because Finch's employer does not offer health insurance, Finch applied for Commonwealth Care. Solely on account of the implementation of § 31(a) by the defendants, Finch was denied insurance. Finch is a diabetic. She suffers from oral health infections, vision loss, and she requires monitoring of her heart, cholesterol level, kidneys, and pancreas, which necessitates ongoing treatment and blood tests. Because Finch has no health insurance, she incurred approximately $1,500 in bills for medically necessary services, including ambulance, private physician, and diagnostic testing. Finch is subject to collection action by these medical providers. Finch requires follow-up medical treatment and fears accessing health care services because of past and future medical debt. *See* Affidavit of Dorothy Ann Finch attached hereto as Exhibit 1.

34.     Prince is a 35-year-old single mother who lives in Massachusetts with her son, who is a United States citizen. Prince lawfully lives and works in Massachusetts because she is the sibling of a United States citizen who filed a family based immigration petition on her behalf. Prince's immigration preference category is F4, which means that it may take years before she can adjust her immigration status and apply for lawful permanent residency. From December 2007 through August 31, 2009, Prince was enrolled in Commonwealth Care and paid monthly premiums. Solely on account of the implementation of § 31(a) by the defendants, Prince was terminated from Commonwealth Care. She was uninsured for one month and then enrolled in another state subsidized

health plan. None of Prince's doctors or medical providers are in the network of the new

health plan. Prince is concerned about losing her continuity of care and having to start

over with new doctors for her medical treatment. Prince is also concerned about having

to travel to new medical providers that are farther away and worries that increased cost

sharing is unaffordable. As a result, Prince has been unable to access health care since

her termination from Commonwealth Care. *See* Affidavit of Roxanne S. Prince attached

hereto as Exhibit 2.

35.     Jane Doe 1 is a 28-year-old divorced mother who lives in Massachusetts, with her

two children, who are United States citizens. She is an applicant for political asylum. In

December 2006, the Commonwealth automatically transferred her out of emergency care

state subsidized health insurance into Commonwealth Care. On September 1, 2009, she

became uninsured solely on account of the implementation of § 31(a) by the defendants.

On November 1, 2009, Jane Doe 1 was enrolled in another state subsidized health plan,

which does not cover any of her medical providers, such as her neighborhood health

clinic. She has been unable to get her prescriptions filled or to see her doctors because

she cannot afford the increased co-payments and other out-of-pocket costs in the new

health plan and she is waitlisted until July 2010 before she can access a primary care

physician that is culturally competent in Spanish. *See* Affidavit of Jane Doe 1, redacted

pending Court approval to proceed pseudonymously, attached hereto as Exhibit 3.

36.     Jane Doe 2 was initially the beneficiary of a Massachusetts employer-based

petition that allowed her to live and work in the United States. She then applied for and

received lawful permanent residency but has had this status for less than five years. She

is diagnosed with cancer. She received treatment under Commonwealth Care, including

primary care physician, gynecologist, and oncologist. Jane Doe 2 was terminated from
Commonwealth Care on August 31, 2009 solely on account of the implementation of
§ 31(a) by the defendants. Jane Doe 2 became uninsured. With the assistance of the
Latino Health Insurance Program under the leadership of Dr. Milagros Abreu, an
Assistant Professor at Boston University, School of Public Health Project, she was then
enrolled in a state health insurance program because of her serious medical condition.
On December 1, 2009, however, Jane Doe 2 was transferred into a new state subsidized
health insurance plan, which is not Commonwealth Care. In compliance with the new
health plan, she changed her primary care physician. Although she located a
gynecologist within a 30-mile radius from her residence under the new plan, she is wait-
listed. Jane Doe 2 cannot find a medical oncologist and fears the loss of continuity of
care. *See* Affidavit of Jane Doe 2, redacted pending Court approval to proceed
pseudonymously, attached hereto as Exhibit 4.

## CAUSES OF ACTION

### Violation of the Equal Protection Clause of Articles 1 and 10 of the Declaration of Rights of the Massachusetts Constitution

37.     The acts, practices, and/or policies of the defendants in implementing G.L. c.
118H, § 31(a) discriminate against the individual plaintiffs and the members of the class
they represent in violation of their rights to equal protection of the laws as guaranteed by
Articles 1 and 10 of the Declaration of Rights of the Massachusetts Constitution by
denying them health care benefits, to which they were entitled prior to the enactment of §
31(a), solely on account of their status as legal aliens, while continuing to provide such
benefits to citizens.

- 12 -

Violation of the Equal Protection Clause of the Fourteenth Amendment to the United
States Constitution, pursuant to 42 U.S.C. § 1983

38.     Section 31(a) discriminates against the individual plaintiffs and the members of

the class they represent in violation of their rights to equal protection of the laws as

guaranteed by 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States

Constitution by invidiously treating them differently than citizens similarly situated

solely on account of their status as legal aliens.

## REQUESTS FOR RELIEF

WHEREFORE, the plaintiffs, individually and on behalf of all persons similarly

situated, respectfully request that this Court:

1.  Assume jurisdiction over this action;

2.  Issue a short order of notice for a hearing on plaintiffs' prayer to reserve the

questions presented herein and report this case for a plenary hearing before the Supreme

Judicial Court;

3.  Grant the Plaintiffs', Jane Does Nos. 1-2, Emergency Motion to Proceed in this

Action Using Pseudonyms;

4.  Determine pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure that

this action be maintained as a class action;

5.  Issue a declaratory judgment that section 31(a) of chapter 65 of the Acts of 2009

violates Articles I and 10 of the Declaration of Rights of the Massachusetts Constitution

and the Fourteenth Amendment to the United States Constitution;

6.  Order the defendants to take prompt steps to (1) inform all class members of their

eligibility for Commonwealth Care; (2) reinstate Commonwealth Care coverage for all

members of the plaintiff class who have lost said coverage to date because of the

- 13 -

implementation of section 31(a) of chapter 65 of the Acts of 2009; and (3) provide

Commonwealth Care coverage for all members of the plaintiff class who are presently

uninsured because of the implementation of section 31(a) of chapter 65 of the Acts of

2009;

7.   Grant such other declaratory or injunctive relief as may be appropriate;

8.   Award the plaintiffs' attorneys' fees and costs; and

9.   Grant such other and further relief as the Court determines is just and proper.

Respectfully submitted,

DOROTHY ANN FINCH, ROXANNE
S. PRINCE, and JANE DOES NOS. 1-2,
Individually and on Behalf of All Other
Similarly Situated Persons

By their Attorneys,

Lorianne Sainsbury-Wong (BBO #634368)
Matthew Selig (BBO #638268)
Wendy Parmet (BBO #390210)
Matthew Fox (BBO #669722)
Health Law Advocates
30 Winter Street, Suite 1004
Boston, MA 02108
Tel: (617) 338-5241
Fax: (617) 338-5242

John H. Cushman (BBO #673936)
411A Highland Avenue #123
Somerville, MA 02144
Tel: (617) 752-1118
Fax: (815) 550-1776

- 14 -

Thomas M. Sobol (BBO #471770)
Lauren Barnes (BBO #663819)
Hagens, Berman, Sobol & Shapiro
55 Cambridge Pkwy, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003

Dated:  February 25, 2010

### Certificate of Service

I, Lorianne Sainsbury-Wong, hereby certify that on this day I caused a copy of the Plaintiffs' Complaint with exhibits to be served by hand delivery to

Commonwealth Health Insurance Connector Authority
Jamie Katz, General Counsel
100 City Hall Plaza, 6th Floor
Boston, MA 02108

Office of Attorney General Martha Coakley
Martha Coakley, Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108

Dated: February 25, 2010

Lorianne Sainsbury-Wong

- 15 -